James D. HODGSON, Secretary of Labor,
United States Department of Labor,
Plaintiff-Appellant,

v.

UNIVERSITY CLUB TOWER, INC.,
et al., Defendants-Appellees.

No. 72–1028.

United States Court of Appeals,
Tenth Circuit.

Aug. 22, 1972.

Michael H. Levin, U. S. Dept. of Labor, Washington, D. C. (Richard F. Schubert, Sol. of Labor, Carin Ann Clauss, Associate Sol., Donald S. Shire, and Major J. Parmenter, Regional Sol., on brief), for plaintiff-appellant.

G. Douglas Fox, Tulsa, Okl. (W. Thomas Coffman, of Gable, Gotwals, Hays, Rubin & Fox, Tulsa, Okl., on brief), for defendants-appellees.

Before BREITENSTEIN, HILL, and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Claiming that the defendants-appellees are a single enterprise within the meaning of § 3(r) of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the Secretary sued to enforce the minimum wage, overtime, and record keeping provisions of the Act. The district court denied relief and the Secretary has appealed.

The facts were stipulated. In 1968, defendant-appellee Kin-Ark Company, Inc., a conglomerate, acquired two apartment buildings and a hotel in the Tulsa, Oklahoma, area. The hotel, Camelot Inn Motor Hotel, is owned and operated by Kin-Ark. Defendant-appellee University Club Tower, Inc., a wholly-owned subsidiary of Kin-Ark, owns and operates University Club Tower, an apartment house. Defendant-appellee Mansion House, Inc., another wholly-owned subsidiary of Kin-Ark, owns and operates Mansion House Apartments. University Club and Mansion are adjacent to each other and are some five miles from Camelot. All three buildings are used for the rental of living space and the furnishing of the usual utilities and services. Camelot is a hotel which serves transients and has about 400 rooms. University Club and Mansion are apartment buildings which serve permanent and semi-permanent tenants and have together about 420 apartments. The two apartment houses have a combined annual dollar volume of less than one million dollars, and Camelot has a similar volume in excess thereof. Each of these establishments has at least two employees who are regularly engaged in the production of goods for commerce. The operations are not unified; there is no interchange of employees; and there is no common bookkeeping.

Certain fundamental principles must be recognized. The Act was passed for humanitarian and remedial purposes, A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095; it must be liberally construed "to apply to the furthest reaches consistent with congressional direction," Mitchell v. Lublin, McGaughy & Associates, 358 U. S. 207, 211, 79 S.Ct. 260, 264, 3 L.Ed.2d 243; and breadth of coverage is vital to the Act's mission, Powell v. United States Cartridge Co., 339 U.S. 497, 516, 70 S.Ct. 755, 94 L.Ed. 1017. The purpose of the 1961 amendments, with which we are primarily concerned, was "to strengthen and extend the scope of the Act." Wirtz v. First National Bank & Trust Co., 10 Cir., 365 F.2d 641, 643. Coverage by the Act, so far as pertinent here, includes enterprises engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 203(s). An enterprise exists when there are (1) related activities (2) performed through unified operation or common control (3) for a common business purpose. 29 U. S.C. § 203(r). See also Wirtz v. First National Bank & Trust Co., 10 Cir., 365 F.2d 641, 643. The issue is whether liberal construction to attain the Act's objectives brings the activities with which we are concerned within the definition of enterprise.

The question of unified management or common control may be quickly disposed of. The Secretary does not claim unified management. Camelot

is owned by Kin-Ark and operated as a division of that company. University Club and Mansion are owned by wholly-owned subsidiaries of Kin-Ark and have common management. The offices of Kin-Ark and of the University Club-Mansion management group are both located in University Club. Ownership by different corporate entities is not determinative. Independent incorporation does not avoid the Act. See S.Rep.No. 1487, 89th Cong., 2d Sess., 2 U.S.Cong. & Adm.News '66, 3002, 3009, and S. Rep.No.145, 87th Cong., 1st Sess., 2 U. S.Cong. & Adm.News '61, 1620, 1660. Kin-Ark controls its subsidiaries. Separate management does not destroy common control. The requirement is the power of actual control, not the exercise of that power. Shultz v. Mack Farland & Sons Roofing Co., 5 Cir., 413 F.2d 1296, 1301. The three buildings may be controlled by Kin-Ark as it deems fit. See Wirtz v. First National Bank & Trust Co., 10 Cir., 365 F.2d 641, 644. We are satisfied that the common-control requirement has been met.

The problems then are whether we have related activities and a common business purpose. These terms are not defined in the Act. The Senate Report on the 1961 amendments says that activities are related "when they are the same or similar" and goes on to include both horizontal and vertical structures. S.Rep.No.145, 87th Cong., 1st Sess., 2 U.S.Cong. & Adm.News '61, 1620, 1660. With regard to common business purpose the Senate Report says only that nonprofit eleemosynary and like activities are not covered by common business purpose. Ibid. We have held that "the profit motive, standing alone, does not suffice to satisfy the common-business-purpose requirement." Wirtz v. First National Bank & Trust Co., 10 Cir., 365 F.2d 641, 644.

The issue then is whether the activities are the same or similar and the business purpose is common. In the connotation in which it is used same means to us identical, and similar means like. Common is more difficult of defi-

nition but we believe that as used it means shared in like manner by members of the group. Before we apply the statutory language, another matter should be mentioned.

The 1966 amendments to the Act exempt from the maximum hours provisions of § 7, 29 U.S.C. § 207, "any employee employed by an establishment which is a hotel, motel, or restaurant." 80 Stat. 830, 833, 29 U.S.C. § 213(b) (8). The regulations say that "the term 'hotel' as used in section 13(b) (8) means an establishment known to the public as a hotel, which is primarily engaged in providing lodging or lodging and meals for the general public." 29 C.F.R. § 779.383(b). Included within the term hotel are establishments which are open to the public and provide accommodations for transients. A transient is defined as "one who is entertained from day to day without any express contract or lease and whose stay is indefinite although to suit his convenience it may extend for several weeks or a season." § 779.383(c). A distinction is made between establishments which serve transients and those "whose income is derived primarily from providing a permanent place of residence * * * for leased periods longer than 3 months."

The Secretary brushes aside the regulatory distinction between establishments serving transients and those serving permanent tenants by saying that they apply to overtime exemptions and not to Act coverage. We agree that exemptions and coverage are different and that interpretation may not be perverted "by mechanically applying definitions in unintended contexts." Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 764, 69 S.Ct. 1274, 1279, 93 L. Ed. 1672. Be that as it may, the regulations point up the difference between an establishment serving transients and one serving permanent tenants.

To apply the definitions, it is clear to us that the activities are not the same. They lack identity because they attract

**748**

and serve different segments of the public in different ways through different operations. With regard to similarity, we have establishments which are alike in that they furnish living space and accompanying facilities and services. They are different in that they attract and serve different customers and furnish different products. One provides temporary quarters for travelers and the other permanent residence for homemakers. The only business purpose which they share equally is the profit motive and that is not enough to satisfy the statute. The activities are neither auxiliary nor integrated. The organizational structure is not horizontal, as in chain stores, because the activities are different; and is not vertical, as in the manufacture and disposition of a particular product, because the activity of one has no connection with the activity of the other.

The decided cases to which our attention is called do not help. Shultz v. Mack Farland & Sons Roofing Company, 5 Cir., 413 F.2d 1296, and Shultz v. Falk, 4 Cir., 439 F.2d 340, cert. denied Falk v. Hodgson, 404 U.S. 827, 92 S.Ct. 62, 30 L.Ed.2d 56, are of little value because they concern horizontal situations. The bank and office-building cases, Wirtz v. Savannah Bank & Trust Company of Savannah, 5 Cir., 362 F.2d 857; Wirtz v. First National Bank & Trust Co., 10 Cir., 365 F.2d 641, and Wirtz v. Columbian Mutual Life Insurance Company, 6 Cir., 380 F.2d 903, are different because they are concerned with either auxiliary or integrated activities. All we can say is that on the record presented the differences outweigh the similarities, and that the purposes of the activities are not shared equally. The statutory standards are not met because we have neither related activities nor a common business purpose. Although the Act must be construed liberally to attain its beneficent objectives, coverage is dependent on the congressional requirements and we are convinced that they have not been satisfied.

Affirmed.