Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

McALESTER CORPORATION, a corporation, doing business as Aldridge Hotel, Hotels Service Company, a corporation, Tulsa Apartments Corporation, a corporation, Charles H. Alberding, an Individual, and J. E. Scally, an Individual, Defendants.

No. 75–117–C.

United States District Court, E. D. Oklahoma.

March 31, 1977.

As Amended May 19, 1977.

William J. Kilberg, Sol. of Labor, Washington, D. C., Ronald Gaswirth, Regional Sol., William E. Everheart, Robert Maris, Dallas, Tex., for Ray Marshall, Secretary of Labor, U. S. Dept. of Labor.

Phil Frazier, Tulsa, Okl., for defendants.

## MEMORANDUM OPINION

MORRIS, Chief Judge.

I. *Introduction.*

This is a civil action brought by the Secretary of Labor, United States Department of Labor, pursuant to section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C. § 217 (1970), hereinafter referred to as the

Act, to enjoin defendants from violating the minimum wage and recordkeeping provisions of the Act, and to restrain the withholding by defendants of payment of any unpaid minimum wages found by the court to be due defendants' employees under the Act, together with interest thereon at the rate of 6 percent per annum from the dates such amounts became due. Trial was had to the court, sitting without a jury, on November 11, 1976.

Plaintiff claims that the defendants, together with certain other hotel corporations owned or controlled by the individual defendants, constitute an enterprise engaged in commerce or in the production of goods for commerce, 29 U.S.C. §§ 203(r), 203(s) (Supp. V, 1975), and are therefore subject to the minimum wage and recordkeeping provisions of the Act. 29 U.S.C. §§ 206, 211(c), 215 (1970). Plaintiff seeks an order restraining the withholding by defendants of payment of minimum wages which accrued within three years prior to the commencement of this action, since, according to plaintiff, defendants willfully violated the Act and are therefore subject to the three year statute of limitations of section 6(a) of the Portal-to-Portal Act, 29 U.S.C. § 255(a) (1970).

Defendants contend that the enterprise provisions of the Fair Labor Standards Act do not bring them within the coverage of the Act, since they do not perform related activities through unified operation or common control for a common business purpose. *See* 29 U.S.C. § 203(r) (Supp. V, 1975). Alternatively, defendants contend that the two year statute of limitations applies, since they did not willfully violate the Act, if at all.

Upon consideration of all the evidence adduced at trial the court makes the following findings of facts and conclusions of law:

## II. *Findings of Fact.*

1. Defendant, McAlester Corporation, during the period since January 1, 1974, has been a corporation authorized to do business in the state of Oklahoma, having an office and place of business at 2nd and Carl Albert Parkway, McAlester, Oklahoma, within the jurisdiction of this court, where it is doing business as the Aldridge Hotel.

2. Defendant, Tulsa Apartments Corporation, at all times material to this action,[1] has been a corporation authorized to do business in the state of Oklahoma having its principal place of business at 9 West 9th Street, Tulsa, Oklahoma, within the jurisdiction of this court. Tulsa Apartments Corporation owned the Aldridge Hotel until December 31, 1973,[2] before it was sold to defendant McAlester Corporation on January 1, 1974. *See* Fact No. 1, *supra.*

3. Defendant, Hotels Service Company, at all times material to this action, has been a corporation authorized to do business in the state of Oklahoma, having an office and place of business at 820 South Main, Tulsa, Oklahoma, within the jurisdiction of this court.

4. Defendant, Charles H. Alberding, is a resident of the city of Chicago, Illinois, and maintains an office at 9 East Huron, Chicago, Illinois. Defendant Alberding, at all times material to this action, has been an officer of defendants, McAlester Corporation, Hotels Service Company, and Tulsa Apartments Corporation.

1. This action was commenced on May 1, 1975, when the plaintiff filed his complaint. Depending on whether the two or three year statute of limitations provision is applicable, the material time in this lawsuit encompasses either the period from May 1, 1972, until November 11, 1976 (the date of trial), or, in the absence of any willful violations, from May 1, 1973, until November 11, 1976. The facts as found by the court apply to both the longer and the shorter period.

2. It is not clear from the evidence for what period of time Tulsa Apartments Corporation owned the Aldridge Hotel. In its answers to plaintiff's interrogatories Tulsa Apartments Corporation stated that it owned the Aldridge Hotel from January 1, 1967, until December 31, 1973. Plaintiff's Exhibit No. 51, at 3. However, defendant Alberding testified that the Aldridge Hotel was owned by Tulsa Apartments Corporation from January 1, 1971, until December 31, 1973.

5. Defendant, J. E. Scally, currently residing in the state of Missouri, was at all times material to this action an officer of defendants, McAlester Corporation, Hotels Service Company and Tulsa Apartments Corporation, and maintained an office at 820 South Main, Tulsa, Oklahoma.

6. The Aldridge Hotel at McAlester, Oklahoma, has been doing business as a hotel at all times material to this action.

7. Defendant Alberding, together with his wife and daughters, own controlling interests in at least 33 of the 36 corporations listed on Schedule A to Plaintiff's Exhibit No. 47.[3] By defendant Alberding's own admission, all the corporations set forth in Plaintiff's Exhibit No. 47 in which he, his wife and daughters own a controlling interest operate hotels with the exception of the Tulsa Apartments Corporation.

8. Defendant Alberding's wife, B. W. Alberding, and defendant Scally each own 50 shares of the outstanding 100 shares in defendant Hotels Service Company. Plaintiff's Exhibit No. 49. Defendant Alberding is the president of this corporation.

9. Defendant Alberding, at all times material to this action, was the president of the 33 corporations listed in Plaintiff's Exhibit No. 47, in which he and his family admittedly own a controlling interest. *See* Fact No. 7, *supra.* Defendant Scally, at all times material to this action, was the vice-president of these corporations, and together with the defendant Alberding and Alberding's wife constituted the boards of directors of these corporations. *See* Plaintiff's Exhibits Nos. 47, 48, 49, 50, 51.

10. The majority of the 33 corporations contained in Plaintiff's Exhibit No. 47, in which defendant Alberding and his family own a controlling interest, Fact No. 7, *supra,* own hotels which appear on a list entitled "Alsonett Hotels—Tulsa Office," Plaintiff's Exhibit No. 3, and are listed as accounts receivable on defendant Hotels Service Company's balance sheet of September, 1975. Plaintiff's Exhibit No. 5.

11. The list entitled "Alsonett Hotels—Tulsa Office" was sent from the Chicago or the Tulsa office to the managers of the hotels in which defendant Alberding owned an interest.[4]

12. "Alsonett Hotels" is not a legal entity of any kind. The name "Alsonett" is derived from the last names of the three men whose combined idea it was 30 years ago to try to get into the hotel business. The names are: Alberding, Gibson and Connett. Each Alsonett Hotel is owned by a separate corporation. From a financial point of view each must stand or fall on its own. Some have failed and others have succeeded. One purpose in so organizing was to avoid inter-hotel FICA liabilities. To organize in this fashion was also conceived to be better from a business and tax point of view. "Alsonett" is simply a banner as to those properties in which defendant Alberding has an interest. "Alsonett" has never had a bank account, the name is not used in the name of any property in which defendant Alberding has purchased an interest and it has no "800" long-distance telephone number. There is no common bank account for Alsonett Hotels and losses from one Alsonett Hotel have never been offset against gains from another Alsonett Hotel. The manager of each Alsonett Hotel is charged with the responsibility of running the hotel. He hires, fires, and determines the wage scales for the employees. Books and records are kept at each hotel and local bank accounts are maintained in the city in which the hotel is situated. Revenues from each operation are deposited in the local bank account.

13. Defendant Alberding hires and fires most of the managers of the Alsonett Hotels. Defendant Scally hired and fired some of the managers usually after consultation with Alberding. Alberding sets the salaries of the managers and they consult with him on most things. When loans are

---

3. Defendant Alberding testified that he, his wife and daughters owned a controlling interest in all but three of the 36 corporations listed on the exhibit.

4. These hotels will be hereinafter referred to as Alsonett Hotels.

made Alberding usually signs the loan papers.

14. Defendant Alberding caused Mrs. Gladys Hyde (formerly Lockhart), manager of the Aldridge Hotel at McAlester from September 1967 until April 1974, to be transferred between Alsonett Hotels. She managed 3 Alsonett Hotels before coming to the Aldridge.

15. It is defendant Alberding's policy to provide rooms free of charge in the Alsonett Hotels to certain employees of the corporations in which he and his family own an interest. This is limited to persons who have an ownership interest, are part of the management or are key employees. Furnishing rooms under the circumstances described is a recognized industry policy.

16. Now and again furniture has been transferred between Alsonett Hotels.

17. Defendant Alberding's signature appears on the bank account signature cards for all of the corporations in which he has an interest.

18. Defendant Hotels Service Company provides a wide variety of services on a fee basis to hotels, some of which are Alsonett Hotels and some of which are not. However, 85 to 90 percent of Hotels Service Company's business consists of providing services to Alsonett Hotels and other corporations in which defendant Alberding and his family own an interest. The remainder of its business is directed towards hotels in which defendant Alberding does not have any interest.[5] A cut-rate fee is charged for services rendered to Alsonett Hotels as compared to the fee charged to other hotels. The fee is based on a percentage of income. If the company is making nothing it owes nothing for the service rendered.

19. Defendant Hotels Service Company provides engineering services for Alsonett Hotels in connection with the selection of equipment for laundries, construction of new wings, and procurement of elevators. In connection with improvements it handles such matters as design, studies, layouts, type of equipment, specifications, bidding, awarding of contracts, inspection and performance. It may or may not procure the finances needed for improvements. Hotels Service Company prepares income tax returns for about 60 percent of the Alsonett Hotels on the basis of the monthly operational reports sent to it by them. It also provides services to such hotels in regard to insurance, food, air conditioning, accounting, real estate taxes and finances. A number of these services were provided to the Aldridge Hotel and all were available to it when needed.

20. The following individuals are key people in the defendant Hotels Service Company organization who perform a variety of services for the Alsonett Hotels:

(a) Ray Ritter is a "travelling troubleshooter." If a vacancy occurs in a hotel manager position, Ritter takes over temporarily. He trains new managers, checks on the performance of current managers, and communicates with defendant Alberding. Ritter is listed as "Hotel Mgm't Spec." on a list entitled "Tulsa Office, Alsonett Hotels," and his address is listed thereon as "Tulsa Office." Plaintiff's Exhibit No. 4. He does not work for defendant Hotels Service Company on a fulltime basis but has some business interests of his own in Siloam Springs, Arkansas.

(b) Ben Sweet is an expert elevator consultant living in Tulsa, Oklahoma. *See* Plaintiff's Exhibit No. 4.

(c) H. Ray, whose name does not appear on Plaintiff's Exhibit No. 4, deals with problems concerning refrigeration, air conditioning and boilers.

(d) Defendant Scally was vice-president and immediate supervisor with respect to all employees of defendant Hotels Service Company whose names are listed on Plaintiff's Exhibit No. 4.

21. Hotels Service Company has on occasion borrowed money from some Alsonett Hotels; also, on occasion, it has loaned money to other Alsonett Hotels; it does not act

---

**5.** Defendant Alberding has no ownership interest with respect to 3 of 53 corporations listed

as accounts receivable of defendant Hotels Service Company. Plaintiff's Exhibit No. 5.

as a joint purchasing agent for Alsonett Hotels.

22. Defendant Scally, a professional engineer and vice-president of Hotels Service Company, acted as a consultant to the Royal Orleans Hotel in New Orleans, La., which is not an Alsonett Hotel. He made all the studies, layouts and designs for that hotel.

23. The managers of the Aldridge Hotel, during substantially all of the time material to this action, were in charge of the operations of the hotel. They hired, fired, and determined the work schedules for desk clerks, maids, janitors and elevator operators. Except for the period of time when it was leased out, they exercised the same authority over cashiers, bus boys and waitresses in the coffee shop. The managers kept the books and accounting records at the hotel and maintained a bank account at the local McAlester bank. A monthly report was sent to defendant Alberding in Chicago and to defendant Scally in Tulsa. Insurance was procured by defendant Hotels Service Company on the Aldridge Hotel and numerous other Alsonett Hotels under a group policy. A group policy afforded a lower premium. The "Insured's Name and Mailing Address" as listed in the policy were "C. H. Alberding and/or Alsonett Hotels and/or Hotels Service Company and/or subsidiaries and/or affiliated companies or corporations as now are hereinafter constituted as their interest may appear Alsonett Hotel, P.O. Box 1379, Tulsa, Oklahoma."

24. At all times material to this action, except during the periods when the coffee shop of the Aldridge Hotel was leased out,[6] the coffee shop employees of the Aldridge Hotel in McAlester regularly handled food products which were produced outside the state of Oklahoma. Plaintiff's Exhibit No. 50, at 2.

25. The maids employed at the Aldridge Hotel in McAlester have regularly handled janitorial supplies which were manufactured outside the state of Oklahoma. *Id.* at 3; Plaintiff's Exhibit No. 51, at 4.

26. The room clerks employed at the Aldridge Hotel in McAlester have regularly received room reservations from hotel customers located outside the state of Oklahoma. Plaintiff's Exhibit No. 50, at 3; Plaintiff's Exhibit No. 51, at 4.

27. The Aldridge Hotel in McAlester, Oklahoma, at all times material to this action and during its ownership by defendant Tulsa Apartments Corporation and defendant McAlester Corporation, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce.

28. Defendant Tulsa Apartments Corporation's annual gross sales derived from the Aldridge Hotel in McAlester in 1973 amounted to $140,498.47. Plaintiff's Exhibit No. 51.

29. Defendant McAlester Corporation's annual gross sales derived from the Aldridge Hotel in McAlester amounted to $119,191.10 in 1974 and $93,811.02 in 1975. Plaintiff's Exhibit No. 51.

30. Defendant Hotels Service Company's annual gross sales during the years 1973 through 1976 ranged from approximately $36,000.00 to approximately $65,-000.00.

31. In 1973 defendant, Tulsa Apartments Corporation, with respect to its ownership of the McAlester Aldridge Hotel only, and defendant Hotels Service Company had a combined aggregate annual gross volume of sales made or business done in an amount of less than $250,000.00.

32. During the years of 1974, 1975 and 1976 defendant McAlester Corporation, with respect to its ownership of the McAlester Aldridge Hotel, and defendant Hotels Service Company had a combined aggregate annual volume of sales made or business done in an amount of less than $250,-000.00.

---

6. Pearl Pettigrew, manager of the Aldridge Hotel in McAlester from August 1974 until July 31, 1976, testified that the coffee shop was leased out on March 15, 1975. Mrs. Lozano, who was a waitress in the coffee shop, testified that it was leased out in March of 1975.

33. The Alsonett Hotels, including the Aldridge Hotel in McAlester, had, at all times material to this action, an aggregate annual gross volume of sales made or business done in an amount in excess of $2,000,-000.00.

34. The Tulsa Apartments, owned by Tulsa Apartments Corporation, are designed for and used as *permanent* residences and contain one and two bedroom apartments as well as efficiencies. An apartment is equipped with a kitchen containing a range and a refrigerator, a bathroom, bedroom and living room. These apartments provide a mode of living different than that provided by hotels in general or the Aldridge Hotel in particular. They are located in Tulsa, Oklahoma.

35. Although the testimony and evidence is in conflict the court finds that more than one-half of the Aldridge Hotel's annual dollar volume at all times material to this action was derived from *transient* guests and hotel related activities. This facility was operated and functioned as a hotel.

36. The testimony and evidence is also in conflict concerning whether the defendants Tulsa Apartments Corporation and McAlester Corporation failed to make, keep and preserve accurate records of the daily and weekly hours worked by the employees of the Aldridge Hotel. The plaintiff has failed to meet his burden of proof in this regard and the court finds these defendants have not failed to keep the records as required under 29 U.S.C. § 211(c) (1970) and 29 C.F.R. Part 516 (1975).

37. Defendants Tulsa Apartments Corporation and McAlester Corporation during their respective ownerships of the Aldridge Hotel in McAlester, paid certain Aldridge Hotel employees at rates less than the minimum wages provided in 29 U.S.C. § 206 (1970), as amended (Supp. V, 1975).

III. *Conclusions of Law.*

1. *Jurisdiction.*

The court has jurisdiction of this action and the parties. 29 U.S.C. § 217 (1970); 28 U.S.C. §§ 1331, 1337, 1345 (1970).

2. *Employers—Employees.*

During the period of its ownership of the Aldridge Hotel in McAlester, defendant Tulsa Apartments Corporation was an employer of the employees of the Aldridge Hotel within the meaning of 29 U.S.C. § 203(d) (1970). Defendant McAlester Corporation has been an employer of the employees of the Aldridge Hotel in McAlester from the date it acquired the hotel from defendant Tulsa Apartments Corporation.

■ There has been no showing, however, that defendant Alberding, living in Chicago, or defendant Scally, living in Tulsa, or defendant Hotels Service Company, whose office was in Tulsa, had "substantial control of the terms and conditions of the work of [the] employees" of the Aldridge Hotel in McAlester, Oklahoma. *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed. 406 (1973). Here, the "managerial responsibilities" of the employees at the McAlester Hotel were in the hotel manager. The court accordingly concludes that defendants Alberding, Scally and Hotels Service Company were not employers of the employees of the McAlester Aldridge Hotel. *Falk v. Brennan, supra ;* 29 U.S.C. § 203(d) (1970), *as amended* (Supp. V, 1975); 29 C.F.R. § 779.19 (1975). *See also Goldberg v. Whitaker House Cooperative, Inc.,* 366 U.S. 28, 31–33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 728, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947); *United States v. Silk,* 331 U.S. 704, 713, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947).

At the onset of the trial a dispute arose between plaintiff and defendants Alberding and Scally concerning whether it was stipulated in the pretrial order that each of them were employers within the meaning of the Act. The pretrial order is ambiguous on the point, see ¶ III(d) and (e), and the court permitted extensive interrogation by plaintiff of the defendants Alberding and Scally going to all fact questions which have a bearing on whether either of them were employers. On the basis of the evidence

adduced the court has concluded they are not employers. The plaintiff cannot have been prejudiced in any way.

### 3. *Enterprise.*

The enterprise provision of the Fair Labor Standards Act, *as amended,* 29 U.S.C. § 203(r) (Supp. V, 1975), states in pertinent part:

> "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . . .

29 U.S.C. § 203(s), *as amended* (Supp. V, 1975), provides in pertinent part:

> "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which—
>
> (1) . . . is an enterprise whose annual gross volume of sales made or business done is not less than $250,000.
>
> . . .

29 U.S.C. § 206, *as amended* (Supp. V, 1975), provides that "every employer shall pay to each of his employees who . . . is employed in an enterprise engaged in commerce or in the production of goods for commerce" the applicable minimum wage.

29 U.S.C. § 211(c) (1970) provides:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports there-

from to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

■ The parties agree that in order to subject any of the defendants to the minimum wage and recordkeeping requirements of the Act, they must be found to constitute an enterprise engaged in commerce or in the production of goods for commerce. "An enterprise exists when there are (1) related activities (2) performed through unified operation or common control (3) for a common business purpose." *Hodgson v. University Club Tower, Inc.,* 466 F.2d 745, 746 (10th Cir. 1972).

### A. *Common Control or Unified Operation.*

■ Here, as in *University Club Tower,* "[t]he question of unified management or common control may be quickly disposed of." 466 F.2d at 746. The evidence does not establish unified operation. The court concludes, however, that the common control requirement has been met. "Separate management does not destroy common control. The requirement is the power of actual control, not the exercise of that power." *Hodgson v. University Club Tower, Inc.,* 466 F.2d 745, 747 (10th Cir. 1972). *See Wirtz v. National Bank & Trust Co.,* 365 F.2d 641, 644 (10th Cir. 1966). Common ownership of the business may be a significant factor in determining control. 29 C.F.R. §§ 770.-215–.216, 799.222–.224 (1975); *Brennan v. Plaza Shoe Store, Inc.,* 522 F.2d 843, 848 (8th Cir. 1975). It cannot seriously be questioned that defendant Alberding and Scally possess the power of actual control with respect to the three corporate defendants as well as the Alsonett Hotels. They are president and vice-president respectively of the corporations involved. Alberding and his family own controlling stock interests in many of the corporations. It follows, that whatever related activities are performed by the corporate defendants and the Also-

nett Hotels, if any, they are performed under common control.

### B. *Related Activities.*

The Senate Report prepared in connection with the 1961 amendments to the Act defines related activities as follows:

> [A]ctivities are "related" when they are the same or similar, such as those of the individual retail or service stores in a chain, or departments of an establishment operated through leasing arrangements. They are also "related" when they are *auxiliary and service activities* such as central office and warehousing activities and bookkeeping, auditing, purchasing, advertising, and other services. Likewise, activities are "related" when they are part of a vertical structure such as the manufacturing, warehousing and retailing of a particular product or products under unified operation or common control for a common business purpose. (Emphasis added.)

S.Rep.No.145, 87th Cong., 1st Sess. 41, *reprinted in* (1961) U.S.Code Cong. & Admin. News, pp. 1620, 1660. Defendants urge that their activities are not related, since they are not the same or similar as those terms have been construed by the United States Court of Appeals for the Tenth Circuit. Defendants rely on the *University Club Tower* case, in which the circuit court held that apartment buildings serving primarily permanent guests did not perform the same or similar activities as a hotel serving primarily transients, and that they were therefore not engaged in related activities. 466 F.2d at 747–48. Defendants argue that Tulsa Apartments Corporation primarily serves permanent guests while the Aldridge Hotel primarily serves transients and the court has so found. Therefore, defendants argue, their activities are not the same or similar and accordingly not related. In view of the foregoing findings the court must conclude that the activities of the Aldridge Hotel and Tulsa Apartments are not the same or similar. *See Hodgson v. University Club Tower, Inc.,* 466 F.2d 745 (10th Cir. 1972).

This conclusion, however, does not dispose of plaintiff's claim of related activities. This is so because activities which are not the same or similar may nevertheless be related by virtue of being *auxiliary and service activities.* *See* S.Rep.No.145, 87th Cong., 1st Sess. 41, *reprinted in* (1961) U.S. Code Cong. & Admin.News, pp. 1620, 1660; *Wirtz v. First National Bank & Trust Co.,* 365 F.2d 641, 643 (10th Cir. 1966). Thus, the Tenth Circuit was careful to point out in the *University Club Tower* case that the activities there involved were *not auxiliary.* 466 F.2d at 748. The facts as found here conclusively show that defendant Hotels Service Company renders services to the Alsonett Hotels, including the Aldridge Hotel in McAlester, which clearly qualify as auxiliary services under the Act, as interpreted by Senate Report No. 145 and the regulations. *See* 29 C.F.R. §§ 779.206, 779.-208 (1975). The court must accordingly conclude that defendant Hotels Service Company and the Alsonett Hotels, including the Aldridge Hotel in McAlester, are engaged in related activities by reason of numerous auxiliary services furnished. The court further concludes that defendant Tulsa Apartments (apart from the latter's ownership and operation of the McAlester Aldridge Hotel until December 31, 1973) is not engaged in related activities, since it is not engaged in activities which are the same or similar, or auxiliary or integrated. Further, although defendants Alberding and Scally functioned as *officers* of defendant Hotels Service Corporation in seeing to it that its services were furnished to the Aldridge Hotel and to other Alsonett Hotels, that is precisely the manner in which they did so function—that is to say, as officers. A corporation necessarily must function through its officers. And the facts as found clearly do not demonstrate that Alberding and Scally as individuals, apart from their role as officers, in the various corporations which are here involved, engaged in "related activities" within the meaning of the law. This action must accordingly be dismissed with respect to defendants Alberding and Scally.

### C. Common Business Purpose.

"Generally, the term 'common purpose' will encompass activities . . . which are directed to the same business objective or to similar objectives in which the group has an interest." 29 C.F.R. § 779.213 (1975). "[C]ommon ownership of 'related activities' carries considerable weight toward a determination that there is a 'common business purpose.' " *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 848 (8th Cir. 1975). Hotels Service Company and the Alsonett Hotels have more in common than a profit motive. *Wirtz v. First National Bank & Trust Co.*, 365 F.2d 641, 644 (10th Cir. 1966). Their related activities are performed for the common purpose of operating and maintaining hotels in which defendant Alberding owns an interest. *See Shultz v. Falk*, 439 F.2d 340, 346 (4th Cir.), *cert. denied*, 404 U.S. 827, 92 S.Ct. 62, 30 L.Ed.2d 56 (1971). *See also Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 519, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973). It cannot be said that the activities of Hotels Service Company and the Alsonett Hotels are performed for "an entirely separate and unrelated business." 29 C.F.R. § 779.213 (1975). The court accordingly concludes that defendant Hotels Service Company and the Alsonett Hotels, including the McAlester Aldridge Hotel, constitute an enterprise in that they perform related activities through common control for a common business purpose. 29 U.S.C. § 203(r) (Supp. V, 1975).

### 4. Enterprise Engaged in Commerce or in the Production of Goods for Commerce.

The court concludes that the enterprise consisting of defendant Hotels Service Company, defendant McAlester Corporation, and defendant Tulsa Apartments Corporation while it owned the Aldridge Hotel, and the Alsonett Hotels is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1) (Supp. V, 1975). *See Brennan v. Dillion*, 483 F.2d 1334 (10th Cir. 1973).

### 5. Violations of the Fair Labor Standards Act.

Some employees of the Aldridge Hotel in McAlester were paid at rates less than the minimum wages applicable at the particular time, in violation of 29 U.S.C. § 206 (1970). The court concludes that there is not sufficient evidence to find that the violations of the minimum wage provisions were willful. The concept of "enterprise coverage" as applied to the intricate facts of this case, involves, to say the least, resolution of complex legal issues. Under these circumstances, the failure to pay the Aldridge Hotel employees in accordance with the applicable minimum wage provisions does not constitute a willful violation. Accordingly, the two year statute of limitations applies. 29 U.S.C. § 255(a) (1970). Further, as the court has previously found, there has been no violation of the recordkeeping provisions of the Act as required under 29 U.S.C. §§ 211(c), 215(a)(5) (1970) and 29 C.F.R. Part 516 (1975).

### IV. Disposition.

Pursuant to 29 U.S.C. § 217 (1970) defendants McAlester Corporation and Tulsa Apartments Corporation in connection with their ownership of the Aldridge Hotel at McAlester are enjoined from withholding the payment of minimum wages to employees of the Aldridge Hotel during the period from May 1, 1973, until November 11, 1976. This restraint applies to defendant Tulsa Apartments Corporation only in connection with its ownership of the Aldridge Hotel during the period relevant to this action, to-wit: From May 1, 1973 until December 31, 1973. Similarly, this restraint applies to defendant McAlester Corporation only in connection with its ownership of the Aldridge Hotel during the period relevant to this action, to-wit: From January 1, 1974 until November 11, 1976. To the amounts owing as back wages to the Aldridge Hotel employees, there shall be added interest at the rate of 6 (six) percent per annum from the date such amounts became due, or from May 1, 1973, whichever is later.

Defendant McAlester Corporation is permanently enjoined, pursuant to 29 U.S.C. § 217 (1970), from violating 29 U.S.C. § 215(a)(2) (1970).

The action is dismissed as to defendants Alberding, Scally and Hotels Service Corporation.

The parties are hereby directed to submit to the court, within thirty days from this date, a judgment granting relief in conformity with this opinion, which contains a determination of the amount due to employees of the Aldridge Hotel at McAlester by reason of withheld payments of minimum wages. In this connection, the parties are advised if defendants' records prove not to be fully adequate for purposes of determining the amount due to the employees, they should proceed in a manner consistent with *Hodgson v. Humphries,* 454 F.2d 1279 (10th Cir. 1972), in determining the amounts due to the employees and may utilize the data set forth in Plaintiff's Exhibit 45.