**Belford RAMÍREZ, d/b/a Almacén Belford Ramírez, Plaintiff,**

**v.**

**UNITED STATES of America; Robert Bergland, U. S. Secretary of Agriculture, etc., Defendants.**

**Civ. No. 80–1769.**

United States District Court, D. Puerto Rico.

April 1, 1981.

---

Federico Rodríguez Pagán, Mayaguez, P.R., for plaintiff.

Gary H. Montilla, Asst. U. S. Atty., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

GIERBOLINI, District Judge.

This is an action brought pursuant to Section 14 of the Food Stamp Act, (the Act), 7 U.S.C. § 2023, in which plaintiff seeks judicial review of the final decision of the Food and Nutrition Service of the Department of Agriculture, (the Service), withdrawing from plaintiff its license to accept and redeem food stamps as a wholesaler.

The decision at bar evolves around the construction of Section 9(b) of the Food Stamps Act, 7 U.S.C. § 2018(b), which provides that no firm shall be allowed to accept and redeem food stamps at the retail and wholesale levels at the same time. Plaintiff is an individual doing business as a wholesaler. The gist of complaint is that for a number of years plaintiff was authorized to handle food stamps at the wholesale level, and that defendants terminated that authorization alleging that plaintiff was in violation of the law since he was also operating as a retailer. Defendants based their

action on the allegation that in addition to his warehouse, plaintiff and his wife own the controlling interest in Supermercado Belford Ramírez, Inc., (a supermarket) and that, for the purpose of the Act, the operation of said supermarket by the corporation and the operation of plaintiff's warehouse should be viewed as one operation carried out by one firm under the purview of the Act. Plaintiff denies the above.

The parties have submitted a detailed stipulation of facts which the court has received in evidence. After careful consideration of the pleadings, the documents in the record, the stipulations and the legal arguments advanced by the parties in their memoranda of law the Court hereby makes the following findings of facts and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

Plaintiff, Belford Ramírez, is engaged as an individual in the wholesale of food and groceries under the name and style of Almacén Belford Ramírez. His business consists of the purchasing of large quantities of groceries which he sells at the wholesale level to other warehouses, stores and small merchants within the island. Plaintiff employs approximately 40 employees in his warehouse. These are salesmen, truck drivers, truck driver's helpers and warehouse personnel. Plaintiff's contributions to the Social Security system on behalf of his employees are paid under his employer's No. 66–0276243. On or about September 19, 1974, plaintiff was issued authorization No. 9822976 to accept and redeem food stamps as a wholesaler, by the Director of the Food Stamps Program.

Plaintiff and his wife are the owners of the outstanding capital stock of Supermercado Belford Ramírez, Inc., (the Corporation). This is a corporate entity duly organized and existing under the laws of Puerto Rico. This corporation is authorized to accept and redeem food stamps as a retailer under authorization No. 9755209 issued by the Director of the Food Stamps Program and operates a supermarket adjacent to plaintiff's warehouse.

The supermarket is managed by a person designated by the Board of Directors of the Corporation of which plaintiff and his wife are officers. It employs approximately 45 employees as shelvers, baggers, cashiers, butchers, assistant butchers and general laborers. Social Security contributions related to these employees are paid by the corporation under its employer No. 66–035–6078.

The Corporation is engaged solely in the retailing of groceries. Its supermarket is located in an area of approximately 4,000 square feet, separated from plaintiff's warehouse by a hall. The premises are leased to the Corporation by plaintiff under a contract that expires on July 1, 1982. Access to both outfits is gained through a main gate leading to State Road No. 100 and both entities share the same parking facilities.

The Corporation and plaintiff's warehouse keep separate accounting records. They maintain separate bank accounts. Utilities such as power, water and telephone are borne separately. The two entities maintain separate insurance policies for the purpose of workmen's compensation. The corporation is licensed by the Municipality of Cabo Rojo to do business under patent No. 331. The warehouse is licensed by the municipality of Cabo Rojo to do business under patent No. 330.

Supermercado Belford Ramírez, Inc., is a *bona fide* corporation duly organized and exercising its corporate prerogatives pursuant to the law. It files income tax returns, personal property tax returns and the annual reports required to be filed by all corporations with the Department of State of Puerto Rico. It is certified to be in good standing by the State Department of the Commonwealth of Puerto Rico.

Effective October 1, 1977, the Food Stamps Act was amended to provide that no firm may be authorized to accept and redeem coupons as both a retail store and as a wholesale food concern at the same time (7 U.S.C. § 2018b).

On or about April 30, 1980, the defendants withdrew from plaintiff his authorization to accept and redeem food stamps on

the grounds that plaintiff could not accept and redeem coupons at the retail and wholesale levels at the same time.

The Food Stamps Act, 7 U.S.C. Sec. 2023, and its implementing regulation, 7 CFR Sec. 273.10, provide that any retail food store or wholesale food concern aggrieved by a final administrative decision denying it authorization to participate, or disqualifying it for further participation in the Food Stamp Program, may obtain, by means of a trial *de novo*, judicial review of the administrative action.

The trial *de novo* provision of 7 U.S.C. Sec. 2023 is broader than the review standard provided in the Administrative Procedure Act, 5 U.S.C. Sec. 500 *et seq.*, since it requires the Court to examine all the issues raised and not merely to determine whether the administrative findings are supported by substantial evidence on the record. The Court must reach its own factual and legal conclusions and is not limited to matters considered in the administrative proceedings. *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975); *Saunders v. United States*, 507 F.2d 33 (6th Cir. 1974); *Bush v. United States*, 473 F.Supp. 715, 717 (E.D.Pa.1979). In considering the factual basis of the administrative determination, the Court must consider the wholesaler's evidence, as well as the Government's evidence, and the burden is on the plaintiff to prove, by a preponderance of the evidence, that the agency's factual determination is incorrect. *Goodman v. United States*, 518 F.2d 505, 511 (5th Cir. 1975); *Modica v. United States, supra; Bush v. United States, supra.* In reviewing the administrative sanction imposed, the Court is limited in its scope of review to a determination as to whether the sanction imposed is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Cross v. United States*, 512 F.2d 1212 (4th Cir. 1975); *Goodman v. United States, supra; Wolff v. United States*, 455 F.Supp. 169 (D.Mo.1978); *Bush v. United States, supra.*

As stated before, the controversy in this case evolves around the construction of Sec-

tion 9(b) of the Food Stamps Act, 7 U.S.C. § 2018(b) which provides:

"No wholesale food concern may be authorized to accept and redeem coupons unless the Secretary determines that its participation is required for the effective and efficient operation of the food stamp program. In addition, no firm may be authorized to accept and redeem coupons as both a retail food store and as a wholesale food concern at the same time."

At the outset we should state that our concern is only with the second sentence of 7 U.S.C. § 2018(b) on which defendants anchor their contention that plaintiff was handling food stamps both as retailer and as wholesaler. The crucial question posed by the pleadings and arguments of the parties is related to a determination of whether plaintiff's wholesale business and the Corporation constitute one firm within the intent and meaning of the Act.

It is settled doctrine that a corporate personality will only be disregarded when used to defeat public convenience, justify wrong, protect fraud, or defend crime. Stevens, *Corporations*, 1949, Sec. 18, p. 95; 18 *Am.Jur.2d*, Sec. 15, p. 561.

The expressions "piercing the corporate veil" and "disregarding the corporate entity" are corollaries of the assumption that incorporation results in the creation of a separate legal person apart from its associates. As expressed by the Circuit Court of Appeals for the Fifth Circuit: "It is one thing to observe the corporate fiction as if the fiction were the truth—when the fiction is not abused. It is quite a different thing when the sole stockholder either ignores the corporation as a separate entity or uses the corporate fiction as an instrument of deceit." *Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823, 830 (5th Cir. 1959), *reh. denied*, 274 F.2d 320 (5th Cir. 1960).

As a general rule it may be stated that a corporation will be looked upon as a legal entity until reason to the contrary appears, but when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud or defend crime the

law will regard the corporation as an association of persons.

 However, we must keep in mind that the mere fact that a corporation is wholly owned by an individual or his family or closely held by a small group of intimates does not mean that it must be viewed as a front or facade. The purposes of achieving limited liability or of consolidating the power of ownership through the creation of a closely held corporation is neither illegal nor contrary to public policy. What the law abhors is the use of the corporate fiction to attain an unlawful end. Thus, even if the sole purpose of incorporation is to qualify the incorporator for social security benefits, the corporation may not be regarded as a sham and the individual owner may not be denied social security benefits. See *Stark v. Flemming*, 283 F.2d 410 (9th Cir. 1960).

 No concept of separate personal liability will suffice to solve a problem dealing with a corporateness. The test to be applied is one of honesty and justice, *N.L. R.B. v. Deena Artware Inc.*, 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960). Among the circumstances to be considered as guidelines are: the extent to which the financial affairs and accounts of a corporation and those who control it are confused to the prejudice of creditors, the undue diversion of funds to individual use, the evasion of contracts or statutes and the abuse of control. Also in the case of closely-held corporations, pertinent to the inquiry are whether the corporation fails to observe the legal requirements and formalities of doing business in a corporate manner; if such things as minutes, meetings and resolutions are properly kept and observed; whether they fail to differentiate between their personal activities and those of the corporation, and whether the corporation is adequately capitalized.

 With those principles in mind we must examine in detail the facts of the instant case to determine whether or not plaintiff's wholesale business and the retail business carried on by the Corporation should be treated as the business effort of only one firm within the scope of the Food Stamps Act, as asserted by defendants.

In answering this inquiry due regard must be given to the fact that the Act does not contain a definition of the word "firm". This leads us to presume that the Congress intended to bestow no extraordinary meaning to the term. Thus, we are dealing with a conventional term which means name, style or title under which a company transacts business and which is synonymous with company, house, commercial house, partnership and concern. *Black's Law Dictionary*, Rev. Fourth Ed., West Pub. Co., 1968.

The facts before us establish that plaintiff carries on his business as a wholesaler under the name of "Almacén Belford Ramírez". The warehouse keeps its own accounting records, operates under its own municipal license and employs about forty employees. There is no doubt that plaintiff's warehouse or "Almacén" must be deemed as a "firm" within the meaning of 7 U.S.C. § 2018(b).

The facts also bear that the supermarket operates under the control of the Corporation. It is managed by a manager selected by the Board of Directors of the Corporation; keeps its own accounting, payroll bank accounts, social security reports and other records; and operates under its own license issued by the municipality. There is no doubt that the Corporation constitutes a firm engaged in the retailing of groceries, within the coverage of the statute.

The facts comprised in the stipulation of the parties and the evidence in the record reflect that the financial affairs of the Corporation are kept apart from those of the plaintiff. There is no evidence of undue diversion of assets or commingling of funds. There has been no showing of abuse of control by the plaintiff of the corporate fiction. No evidence has been adduced to the effect that the Corporation has failed to observe and comply with all legal requirements.

The word "firm" in its broad meaning may admit the idea of the union of various persons or entities in a joint business effort. Therefore, in a given situation a court of

law may regard the combined efforts of various entities as a whole, without disregarding the corporate veil. This theory applies as a principle of law only when in a particular situation, an applicable statute provides a definition embodying the concept, as it is in the case of the "enterprise coverage" afforded by the Fair Labor Standards Act.[1] Under that statute, the business activities of various establishments may be viewed as a single enterprise. See *Shultz v. Wilson Bld. Inc.*, 478 F.2d 1090 (5th Cir. 1970). However, in order for the courts to find the existence of an enterprise, sufficient evidence must be submitted to establish the existence of related activities, a joint operation, a common control and a common business purpose. See *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296 (5th Cir. 1969).

The instant case does not fall within the realm of said doctrine. Here the statute does not provide a definition of the word "firm" along the lines of the enterprise test of the Fair Labor Standards Act. Further, if we were to enlarge the concept of the word on equitable principles, we would still be bound by a theoretical concept of joint operation, common control and common business purposes.

The record is devoid of any evidence to sustain a finding that the activities of the warehouse are interrelated to those of the corporation. There is no proof of joint purchasing of groceries; joint use of transportation; recourse to common merchandising structures; interchange of employees; and common management or common business policies. Also, the record is bare of any proof of integrated or auxiliary activities such as joint advertisement efforts or common schemes for publicity and marketing.

■ We are thus constrained to hold that there is nothing in the record to sustain a finding of a joint operation and common control of the two entities. The record is abundantly clear with respect to separate management policies and the mere fact that plaintiff is a stockholder in the corporation is not enough to give rise to a presumption that there is a common control. Neither can we find a common business purpose, as there is no evidence of a vertical or horizontal relation between the two activities and the only common denominator to the two entities is their profit move, inherent to all business activities, and that motive alone is not sufficient to establish a common business purpose. See *Hodgson v. University Club Tower, Inc.*, 466 F.2d 745 (10th Cir. 1972). Moreover, in the absence of fraud or a deliberate intent to circumvent the law, the argument that plaintiff conducts his business through the corporation must fail; cf. *Zubik v. Zubik*, 384 F.2d 267 (3rd Cir. 1967).

WHEREFORE, in view of the foregoing, the Department of Agriculture's decision withdrawing plaintiff's license to accept and redeem food stamps as a wholesaler is hereby REVERSED.

IT IS SO ORDERED.