Peter J. **BRENNAN**

v.

Mitchell N. **ASHY** et al.

Civ. A. No. 19573.

United States District Court,
W. D. Louisiana,
Opelousas Division.

July 11, 1975.

them from violating the minimum wage, overtime and record keeping provisions of the Fair Standards Act, as amended, 29 U.S.C. 201 *et seq.* (hereinafter referred to as the Act), and to restrain defendants from withholding minimum wages and overtime compensation due the defendants' employees since May 1, 1971.

The Secretary's position is that the defendants' operations are covered by Sections 3(r) and 3(s) of the Act, 29 U.S.C. § 203(r), (s), the 1961 Enterprise Amendments.[1]

Section 3(s) of the Act, 29 U.S.C. § 203(s), covers only those enterprises having gross annual sales of $250,000.00 or more. It was stipulated that neither operation alone met the gross annual sales requirement, but that the combined operations did meet that requirement. Thus, to be covered under the Act, the operations must be found to constitute a single "enterprise" within the meaning of the Act.

Employees of any business organization covered under these amendments to the Act must be paid the appropriate minimum wage and overtime as provided by Sections 6 and 7, 29 U.S.C. §§ 206, 207.[2]

Defendant, Mitchell N. Ashy and Associates, is a partnership comprised of Mitchell N. Ashy and Charles M. Waters. The partnership owns and op-

William J. Kilbert, Sol. of Labor, U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

John G. Torian, II, Davidson, Meaux, Onebane, Donohoe, Bernard, Torian & Diaz, Lafayette, La., for defendants.

## OPINION

NAUMAN S. SCOTT, District Judge.

The Secretary of Labor brought this action against the defendants to enjoin

---

1. Section 3(r), 29 U.S.C. § 203(r), provides, in pertinent part:

   "(r) 'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor . . .".

   Section 3(s), 29 U.S.C. § 203(s), provides, in pertinent part:

   "(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which—(1) . . . and beginning February 1, 1969, is an enterprise whose annual gross volume of sales made or business done is not less than $250,000 . . . .".

2. Section 6 of the Fair Labor Standards Act, 29 U.S.C. § 206, at the time pertinent to this case, provided in part:

   "(a) Every employer shall pay to each of his employees who in any work week is engaged in commerce or in the production of goods for commerce, or is employed in an en-

erates the Downtowner Motel in Opelousas, Louisiana. Defendant, Inn Restaurants, Inc., a corporation wholly owned by W. Kenneth Howard, operates a restaurant located in the motel building. The partnership owns no stock in the corporation and the corporation owns no interest in the partnership.

Inn Restaurants, Inc. leases the restaurant facilities and equipment from Mitchell N. Ashy and Associates. The restaurant has one entrance onto the lobby of the motel and one outside entrance onto the parking lot. Under the terms of the lease the restaurant must provide meals (room service) which are delivered by the motel to the rooms of its guests; motel guests may charge the costs of restaurant services on their motel bill, with the motel paying the restaurant for these charges and then collecting one bill from the customer; any such charges which later prove not collectible are billed back to the restaurant; and the motel is responsible for maintaining the structure of the building, while the restaurant is responsible for maintaining the fixtures and equipment in the restaurant.

■ The statutory definition of "enterprise" requires the existence of three elements:

(1) Related Activities;

(2) Common control or a unified operation;

(3) A common business purpose. 29 U.S.C. § 203(r); *Wirtz v. Savannah Bank & Trust Company of Savannah*, 362 F.2d 857 (5th Cir. 1966); *Hodgson v. Eunice Superette, Inc.*, 368 F.Supp. 639 (W.D.La.1973).

1. RELATED ACTIVITIES. The report of the Senate Committee on labor and public welfare states:

"Within the meaning of this term, activities are 'related' when they are the same or similar, such as those of the individual retail or service stores in a chain, or departments of an establishment operated through leasing arrangements. They are also 'related' when they are auxiliary and service activities such as central office and warehousing activities and bookkeeping, auditing, purchasing, advertising, and other services. Likewise, activities are 'related' when they are part of a vertical structure such as the manufacturing, warehousing, and retailing of a particular product or products under unified operation or common control for a common business purpose." Senate Report No. 145, 87 Cong. 1st Sess. 31 (1961), U.S. Code, Congressional and Administrative News, 1961, pp. 1620, 1660.

■ The motel and the restaurant are not "the same or similar". Same means identical, and similar means like. *Hodgson v. University Club Tower, Inc.*, 466 F.2d 745, 747 (10th Cir. 1972). Certainly the motel and restaurant do not perform the same type of business activity, nor are they alike. They perform completely different services. Neither are the operations auxiliary; one is not a necessary adjunct of the other. *Cf. Wirtz v. Savannah Bank, supra.* They are not part of a vertical or horizontal structure. We find that the business activities of the motel and

terprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) not less than a $1.40 an hour during the first year from the effective date of the Fair Labor Standards Amendments of 1966 and not less than $1.60 an hour thereafter, except as otherwise provided in this section . . . ".
Section 7(a)(1), 29 U.S.C. § 207(a)(1), Maximum Hours, provides:
"Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty [40] hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

restaurant are not related activities within the meaning of the Act.

■ 2. COMMON CONTROL. As we noted above, the businesses are separately owned; the owners of neither entity have any ownership interest in the other. However, the test of common control is not ownership, but rather whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise. *Shultz v. Mack Farland,* 413 F.2d 1296 (5th Cir. 1969); *Shultz v. Morris,* 315 F.Supp. 558 (M.D.Ala. 1970).

The evidence clearly established that Mr. Howard and Mrs. Hattie Powell, the manager of the restaurant, make all policy decisions regarding the restaurant. They determine the items on the menu, the prices charged, hiring and firing of restaurant personnel, opening and closing hours, and other aspects of the restaurant's business. Mr. J. C. Sharp, the motel manager, makes all of the policy decisions for the motel.

From the evidence, it is clear that there is no common control center which makes decisions binding on both operations. Mrs. Powell testified that she works closely with Mr. Sharp, and that on occasion he makes suggestions about the restaurant which she often follows. Nevertheless, she made it clear that the decision is always hers and that Mr. Sharp's suggestions are only advice. Mr. Sharp testified that he makes frequent trips to Lafayette, Louisiana and that when he does he often takes along checks for Mr. Howard, who is manager of a Lafayette motel, to sign. This was done as a courtesy, however, and was not regarded as part of his duties. When the restaurant closes at night, the daily receipts are placed in the motel safe until the next morning. However, the money is kept in a separate container, and is not mingled with the motel's money. All of these facts show that the two businesses work closely together, as a matter of convenience.

There is no common control over the two operations; there is no unified operation.

■ 3. COMMON BUSINESS PURPOSE. This term is not defined by the Act. Many of the considerations involving common control "are also relevant in determining the existence of a 'common business purpose'." *Wirtz v. Savannah Bank & Trust Co., supra.* The existence of the profit motive, standing alone, does not suffice to satisfy the common-business-purpose requirement. *Wirtz v. First National Bank & Trust Co.,* 365 F.2d 641 (10th Cir. 1966); *Hodgson v. University Club Tower, Inc., supra.*

The regulations promulgated by the Secretary to implement the Act afford some guidance to the question of common business purpose. See 29 C.F.R. 779.213. This regulation points out that the term includes activities which are directed to the same business objective or to similar objectives in which the group has an interest. The determination in any case involves a practical judgment based on the facts. Where the facts show the activities are not directed toward the same or similar business objectives, there will be no common business purpose.

The facts of this case make it imminently clear that the business objective of the motel is to provide lodging for travelers; that of the restaurant is to provide food service. Because of their proximity, each naturally attracts some business from the customers of the other. However, Mrs. Powell testified that approximately 70% of the restaurant's business came from people who were not motel guests. There is a complete lack of evidence that the financial condition of one business is reflected in that of the other. A separate restaurant venture is common in hotels, office buildings, shopping centers and other such endeavors. Under the facts in these cases, as well as the instant case, we cannot say there existed a com-

mon business purpose between the defendants, simply because of their physical proximity to each other. Cooperation and the service to common customers is a natural result of such location and is to the separate benefit of each.

Since none of the elements necessary for "enterprise coverage" are present, we hold that defendants are not covered by the Act, and therefore plaintiff is not entitled to the recovery sought. This opinion will serve as a judgment dismissing plaintiff's claims.