John T. DUNLOP, Secretary of Labor,
United States Department of Labor,
Plaintiff-Appellant,

v.

Mitchell N. ASHY et al.,
Defendants-Appellees.

No. 75–3405.

United States Court of Appeals,
Fifth Circuit.

July 13, 1977.

William J. Kilberg, Sol. of Labor, Donald S. Shire, Atty., Carin Ann Clauss, Associate Sol., Paul D. Brenner, Atty., Jacob I. Karro, U. S. Dept. of Labor, Washington, D. C., Ronald M. Gaswirth, Reg. Sol., U. S. Dept. of Labor, Dallas, Tex., for plaintiff-appellant.

John G. Torian, II, Lafayette, La., for defendants-appellees.

Before GEWIN, RONEY and HILL, Circuit Judges.

GEWIN, Circuit Judge:

This is an appeal by the Secretary of Labor from the district court's decision that the Downtowner Motor Inn in Opelousas, Louisiana and the Inn Restaurants, Inc. are not a single "enterprise" within the meaning of the Fair Labor Standards Act (FLSA or the Act), 29 U.S.C. §§ 201 *et seq.*, 203(r). *Brennan v. Ashy,* 397 F.Supp. 1347 (W.D. La.1975). The Secretary contends that the district court's opinion is erroneous as a matter of law and is, therefore, unshielded by the "clearly erroneous" standard of Rule 52, Fed.R.Civ.P. *Brennan v. Plaza Shoe Store, Inc.,* 522 F.2d 843, 846 (8th Cir. 1975). We agree with the Secretary's characterization of the question on appeal as a legal one, but conclude that the evidence fails to support at least one of the essential requirements of enterprise coverage and the judgment of the court below must, therefore, be affirmed.

In 1971 the Downtowner Motor Inn in Opelousas, Louisiana was bought by a partnership composed of Mitchell N. Ashy and Charles M. Waters. The motor inn is located in a four story building with motel rooms, a swimming pool, parking areas, two cocktail lounges, two banquet rooms and a restaurant. The partnership, known as Mitchell N. Ashy and Associates, operated both the motel and the restaurant for the first three or four months after the purchase. On June 30, 1971, however, the restaurant was leased to Inn Restaurants, Inc.,

which is wholly owned by Kenneth Howard. At the time of the lease Howard was employed as manager of another motel owned by Ashy in Lafayette, Louisiana. Ashy testified that he always tried to lease out the food service operation in his motels and, with the idea of increasing his earnings, Howard approached him about entering into such an arrangement. When the opportunity arose in Opelousas, Howard formed Inn Restaurants, Inc. and executed the lease five days later.[1] Several important aspects of the relationship between the motor inn and the restaurant were noted in the district court opinion:

> Inn Restaurants, Inc. leases the restaurant facilities and equipment from Mitchell N. Ashy and Associates. The restaurant has one entrance onto the lobby of the motel and one outside entrance onto the parking lot. Under the terms of the lease the restaurant must provide meals (room service) which are delivered by the motel to the rooms of its guests; motel guests may charge the costs of restaurant services on their motel bill, with the motel paying the restaurant for these charges and then collecting one bill from the customer; any such charges which later prove not collectible are billed back to the restaurant; and the motel is responsible for maintaining the structure of the building, while the restaurant is responsible for maintaining the fixtures and equipment in the restaurant.

*Brennan v. Ashy*, 397 F.Supp. 1347, 1349 (W.D.La.1975). Generally, the facts are not in dispute and have been stipulated by the parties. As necessary, additional facts will be presented in the course of this opinion. As noted by the Eighth Circuit, "The question of whether several businesses constitute an 'enterprise' is a question to be resolved in each case on the basis of all the particular facts of the case." *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846 (8th Cir. 1975). This court has been advised of three other district court opinions dealing with fact situations virtually identical with this one. *Usery v. Fort Payne Motels, Inc.*, 432 F.Supp. 1079 (N.D.Ala. Dec. 16, 1976), *appeal docketed sub nom. Marshall v. Fort Payne Motels, Inc.*, No. 77–1356 (5th Cir. Feb. 15, 1977) (no enterprise coverage); *Usery v. Mohs Realty Corp.*, 424 F.Supp. 20 (W.D.Wis.1976) (enterprise coverage); *Brennan v. Western Lands Motel d/b/a Holiday Inn of Paris*, 21 WH Cas. 254, 71 CCH Labor Cas. ¶ 32,899 (E.D.Tex.1973) (not otherwise reported, enterprise coverage). *Cf. Wirtz v. Mod. Builders, Inc.*, 288 F.Supp. 338 (M.D.Ga.1968).

In bringing this action the Secretary of Labor sought to enjoin violation of the minimum wage, overtime, child labor, and record keeping requirements of the Act by the defendants. 29 U.S.C. §§ 206, 207, 211, 212, and 215(a)(2, 4, and 5). The complaint also sought to restrain defendants from further withholding of minimum wages due under the Act and interest thereon. It is alleged that the amount of these improperly withheld wages and the interest thereon is in excess of $87,000. The parties stipulated at trial that neither the motor inn nor the restaurant had gross annual sales of $250,000 or more as required for coverage under the Act by 29 U.S.C. § 203(s), but that the gross annual sales of the combined operations would exceed this statutorily-set jurisdictional amount. Until such time as the individual gross annual sales of the motor inn and restaurant bring them individually within the ambit of the FLSA, coverage by that Act must be grounded upon a finding that the two operations constitute a single enterprise within the meaning of 29 U.S.C. § 203(r):

> (r) "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or

---

1. In connection with the formation of this corporation, Howard borrowed $1,000 from Ashy. The parties disagree as to whether this loan was made to the corporation or to Howard personally. The record is silent on the subject except for Howard's statement that he signed a note for the money. Appendix, p. 68.

other organizational units including departments, . . . but shall not include the related activities performed for such enterprise by an independent contractor: . . . .

As specified in the statute, three elements must coexist for there to be enterprise coverage under the FLSA: (1) related activities; (2) unified operation or common control; and (3) a common business purpose. *Brennan v. Arnheim & Neely,* 410 U.S. 512, 518, 93 S.Ct. 1138, 1142, 35 L.Ed.2d 463, 470 (1970); *Brennan v. Plaza Shoe Store, Inc.,* 522 F.2d 843, 846 (8th Cir. 1974); *Brennan v. Veternas Cleaning Service, Inc.,* 482 F.2d 1362, 1366 (5th Cir. 1973). The district court found that none of the three elements were present in this case.

■ It is unquestioned that in everyday parlance the motor inn and restaurant are "related." They are housed in the same building, they often provide complementary services to the guests and patrons of each other, and they cooperate with each other in various activities. Related activities in the generic sense of that term, however, is not the same as related activities within the statutory meaning of the term. Similarly, we are not convinced that a common business purpose has been shown. It may be that both of these elements do exist here, but we find it unnecessary to decide that question. The record evidences a substantial degree of cooperation between the motor inn and the restaurant, but not the unified operation or common control contended by the Secretary. The unmistakable absence of this necessary element requires affirmance of the district court's dismissal of the complaint.

■ To establish enterprise coverage under the Act, it is incumbent upon the plaintiff to prove only one of the two alternative requirements of "unified operation" or "common control." *Dunlop v. Lourub Pharmacy, Inc.,* 525 F.2d 235, 236 (6th Cir. 1975); *Wirtz v. Barnes Grocer Co.,* 398 F.2d 718, 721 (8th Cir. 1968). The question of common control was properly disposed of we think in the district court's opinion:

2. COMMON CONTROL. As we noted above, the businesses are separately owned; the owners of neither entity have any ownership interest in the other. However, the test of common control is not ownership, but rather whether there is a common control center with the ultimate power to make binding policy decisions for all units of the enterprise. *Shultz v. Mack Farland,* 413 F.2d 1296 (5th Cir. 1969); *Shultz v. Morris,* 315 F.Supp. 558 (M.D.Ala.1970).

The evidence clearly established that Mr. Howard and Mrs. Hattie Powell, the manager of the restaurant, make all policy decisions regarding the restaurant. They determine the items on the menu, the prices charged, hiring and firing of restaurant personnel, opening and closing hours, and other aspects of the restaurant's business. Mr. J. C. Sharp, the motel manager, makes all of the policy decisions for the motel.

From the evidence, it is clear that there is no common control center which makes decisions binding on both operations. Mrs. Powell testified that she works closely with Mr. Sharp and that on occasion he makes suggestions about the restaurant which she often follows. Nevertheless, she made it clear that the decision is always hers and that Mr. Sharp's suggestions are only advice. Mr. Sharp testified that he makes frequent trips to Lafayette, Louisiana and that when he does he often takes along checks for Mr. Howard, who is manager of a Lafayette motel, to sign. This was done as a courtesy, however, and was not regarded as part of his duties. When the restaurant closes at night, the daily receipts are placed in the motel safe until the next morning. However, the money is kept in a separate container, and is not mingled with the motel's money. All of these facts show that the two businesses work closely together, as a matter of convenience. There is no common control over the two operations; there is no unified operation.

*Brennan v. Ashy,* 397 F.Supp. 1347, 1350 (W.D.La.1975). In his brief in this court,

the Secretary makes the following assertion:

> While most of the factors emphasized by the court below (under the heading, "COMMON CONTROL") are, together with other factors, relevant to whether the activities in question are performed through "common control," they are not determinative of whether these activities are performed through "unified operations." Ignoring the practical and realistic factors pertinent to the issue of "unified operation," the district court attached mistaken and overriding significance to factors which are simply the ordinary attributes of day-to-day management of multiple organizational units.

Secretary's brief, p. 25. We agree with the Secretary that "practical and realistic factors" must be considered in determining whether the motor inn and the restaurant engage in unified operations. For guidance we turn to the Department of Labor's Interpretative Bulletin,[2] which provides the following definition:

> Since the term "unified operation" has reference to the method of performing the related activities, it means combining, uniting, or organizing their performance so that they are in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose. The term "unified operation" thus includes a business which may consist of separate segments but which is conducted or operated as a unit or as a single business for a common business purpose.

29 C.F.R. § 779.217 (1975). *See also* 29 C.F.R. §§ 779.218–.220. With respect to this definition, the Secretary refers this court to the agreement of Inn Restaurants, Inc. to "cooperate with the manager of the said motel in the operation of the said motel, lounge, and restaurant as a single unit." He further notes that this cooperative ef-

fort runs to the provision of room service for motor inn guests, single statement billing for motel and restaurant charges, and joint handling of banquets and private parties.

 We are unable to accept the Secretary's argument under the facts and in the circumstances revealed by the record. A careful analysis of the realistic relationship between the parties and the practical requirements of business operations, convinces us that the operations here in question are not unified within the meaning of the FLSA as interpreted by the Department of Labor. There is a natural tendency to conclude that these businesses are part of a single entity since they are housed in the same building, but physical connexity is not the test. The very nature of the business of each entity here involved does make mutual cooperation necessary, especially in areas involving complementary services, such as room service and the planning of private parties. Such services and conveniences are expected at a motel with a neighboring restaurant, but to say that the availability of these expected services is tantamount to unified operation is to expand the statute. In this regard, some coordination of effort by motor inn and restaurant staffs is required on occasions, but such coordinated efforts are by themselves insufficient to fuse the two operations into "a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." 29 C.F.R. § 779.217 (1975).

Additionally, the Secretary argues that "Unified operation is assured . . . by the underlying personal and business relationships between the parties who executed the lease . . . ." We attach no special significance to the fact that Kenneth Howard, owner of Inn Restaurants, Inc., is employed as manager of Ashy's Lafayette,

---

**2.** Such administrative interpretations are entitled to great weight. *Idaho Metal Works v. Wirtz*, 383 U.S. 190, 205, 83 S.Ct. 737, 746, 15 L.Ed.2d 694, 703 (1966); *United States v. American Trucking Associations*, 310 U.S. 534,

549, 60 S.Ct. 1059, 1067, 84 L.Ed. 1345, 1354 (1966); *Brennan v. Greene's Propane Gas Service, Inc.*, 479 F.2d 1027, 1031 n.13 (5th Cir. 1973).

Louisiana motel and as supervisor of the operations of Ashy's other two motels.[3] There has been no hint that Howard's information of the restaurant corporation and the subsequent lease was anything less than an arm's length transaction. The evidence presented at trial was that Ashy was "not in the restaurant business" and that based on his past experience, restaurants were "a headache, a problem to operate." Howard approached Ashy about the possibility of leasing the restaurant in Opelousas as a way to supplement his income as manager of the Lafayette motel. We see nothing suspect about leasing the operation in these circumstances to Howard, who has been in the hotel and restaurant business since 1936.

A complete reading of the transcript of the proceedings in the district court makes it even more evident that the motor inn and the restaurant are not operated in a unified manner. The Secretary has attempted to show unification of operation through several examples of full cooperation between the two entities.[4] When placed in their proper context, however, these alleged examples of unified operations seem innocently indicative of cooperative efforts by the staff and management of two symbiotically associated businesses. For example, the fact that the restaurant receipts and cash box are kept at the motel office at night is not so much an indicator of unified operations, as it is simply a result of the fact that the motel has a safe while the restaurant does not. The same principle applies with regard to the use of the restaurant ice machine by motel guests. Where one ice machine or safe is sufficient to handle the needs of both operations, it seems quite reasonable for these business neighbors to help each other. This is especially true in light of their financial situations.[5] Similarly, the fact that the motel's auditor prepares the restaurant's daily report becomes a less indicative measure of unified operations when it is remembered that the rent paid by Inn Restaurants, Inc. is partially based on a percentage of the restaurant's gross sales. There is testimony in the record that the preparation of the restaurant report was a method of monitoring this volume of business.

Much of the Secretary's argument is answered by specific stipulations of fact during the course of the proceedings in the district court. We refer to the following three stipulations:

"A partnership *does in fact operate* the Downtowner Motor Inn in Opelousas, St. Landry Parish, Louisiana."

"Inn Restaurants, Inc. *does operate* a restaurant at or near 404 East Landry Street, Opelousas, St. Landry Parish, Louisiana."

"MR. TORIAN: Further, Your Honor, I don't think that we need to put them into the record. It may be that we can stipulate. I have brought the payroll records as examined by Mr. Webber himself. He has already testified they were separate and in lieu of actually introducing that entire glob of papers, if we could just

---

**3.** Any importance that might be attached to Howard's supervisory position of motels owned by Ashy & Associates is diminished by the summary treatment of that question at trial. Except for Howard's characterization of his position as being "an advisor rather than a supervisor," appendix, p. 63, the record gives us no indication of whether Howard had any specific duties in this regard to the Opelousas operation. See appendix, pp. 55–56 (testimony of Ashy), 63 (testimony of Howard).

**4.** Besides those mentioned in the text, other examples of close cooperation noted by the Secretary include some joint advertising and occasional supervision of restaurant employees by the motel manager arising from necessity on rare occasions. Additionally, the record shows that approximately 30 percent of the restaurant's business is derived from guests staying at the motor inn. The great majority of its business, approximately 70%, comes from the public who do not use the motel.

**5.** Ashy and Associates purchased the motor inn when it was in bankruptcy. It is impossible to tell the exact financial position of the motor inn from the tax returns in the record as they cover both the Opelousas and the Lafayette, Louisiana motels. The corporate tax returns of Inn Restaurants, Inc. for the years 1971–1973 are in the record and show taxable income (or loss) as follows: 1971, ($4,280); 1972, $340; and 1973, ($5,780).

simply stipulate that if the records were introduced they would actually—the production of them *would actually show* that they were separate, *one is for the motel and one for the restaurant.*" (emphasis added)

The foregoing stipulations tend to establish without question that the two businesses are operated separately, their records are kept separately, and that these two businesses do not constitute a unified operation and are not subject to common control.[6]

We are mindful of the liberal construction to be afforded the FLSA, *Mitchell v. C. W. Vollmer & Co.,* 349 U.S. 427, 429, 75 S.Ct. 860, 861–862, 99 L.Ed. 1196, 1200 (1955); *Wirtz v. Keystone Readers Service, Inc.,* 418 F.2d 249, 261 n.8 (5th Cir. 1969); *Shultz v. Mack Farland & Sons Roofing Co.,* 413 F.2d 1296, 1300 (5th Cir. 1969), but the Act must be applied with reason and in a common sense fashion. To be considered a "unified operation" within the meaning of 29 U.S.C. § 203(r), the record must evidence more than close cooperation and mutual assistance. In short we are unconvinced that the Opelousas Downtowner Motor Inn and Inn Restaurants, Inc. are "in effect a single business unit or an organized business system which is an economic unit directed to the accomplishment of a common business purpose." 29 C.F.R. § 779.217. There being neither unified operation nor common control, enterprise coverage under the FLSA cannot be found. The judgment is AFFIRMED.

---

**6.** In his brief the Secretary forthrightly states:

The local managers responsible for day-to-day operations of the motel and restaurant facilities are respectively, J. C. Sharp and Hattie Powell. Mrs. Powell has managed the restaurant continuously since well before it was purchased by the partnership. She has been involved in the restaurant business "[p]ractically all of [her] life", and has always "run [her] own restaurant" at the Opelousas Downtowner. She is directly responsible for hiring and firing, setting pay scales, scheduling employee working hours and res-

taurant operating hours, determining what foods to purchase from whom, selecting and pricing the menu, etc. Supervision by Mr. Howard is generally limited to a weekly review of expenditures and the signing of payroll checks. By the same token, the motel's manager, Mr. Sharp, makes all the day-to-day operating decisions for the motel, likewise generally subject only to advice or limited supervision from Mr. Howard. (Citations to appendix omitted).

Secretary's brief p. 9.