**Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**Ernest SIDERIS and Chris Sideris, Partners, d/b/a Aero Apartment/Hotel, the Irwin Hotel, and the Edward Hotel, Defendants.**

Civ. No. 79–0–320.

United States District Court, D. Nebraska.

Oct. 8, 1981.

Robert S. Milgrim, Atty., Depart. of Labor, Kansas City, Mo., for plaintiff.

Frost & Meyers, Omaha, Neb., for defendants.

SCHATZ, District Judge.

## I. INTRODUCTION

This is a civil action brought by Ray Marshall, as Secretary of Labor of the United States Department of Labor, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 *et seq.* (hereinafter FLSA or the Act). The Secretary brings this action to enjoin defendants from violating the provisions of §§ 15(a)(2) and 15(a)(5) of the Act, 29 U.S.C.A. §§ 215(a)(2) and 215(a)(5), pursuant to § 17 of the Act, 29 U.S.C.A. § 217; and to recover unpaid

minimum wages and overtime compensation allegedly owing to defendants' employees, together with an equal additional amount as liquidated damages, under § 16(c) of the Act, 29 U.S.C.A. § 216(c). Plaintiff asserts that defendants' partnership business (which owns and operates the Aero Hotel, the Irwin Hotel, and the Edward Hotel) and two separate corporations (one of which owns and one of which operates the Conant Hotel) in which defendants have an ownership interest, constitute an enterprise engaged in commerce or in the production of goods for commerce, 29 U.S.C.A. §§ 203(r) and 203(s), and are, therefore, subject to the minimum wage, maximum hours and record-keeping provisions of the Act, 29 U.S.C.A. §§ 206, 207, 211(c), 215.

Defendants, Chris Sideris and Ernest Sideris, contend that the enterprise provisions of the FLSA do not bring them within the coverage of the Act because the component activities are not "related" or "performed (either through unified operation or common control) by any person or persons for a common business purpose" so as to constitute a single enterprise under 29 U.S.C.A. § 203(r).

At the pretrial conference held on September 26, 1980, the parties' oral request for a separate trial on the issue of coverage under the FLSA was granted by this Court. Trial was had to the Court, sitting without a jury, on August 18 and 19, 1981. Upon consideration of all the evidence adduced at trial, the Court enters this memorandum opinion as its findings of fact and conclusions of law.

## II. FINDINGS OF FACT

1) Defendants, Chris Sideris and Ernest Sideris (hereinafter Chris and Ernest Sideris) are members of a partnership transacting business within the State of Nebraska. Said partnership owns and operates the Aero Hotel, the Irwin Hotel and the Edward Hotel, all of which are located in Omaha, Nebraska. Chris and Ernest Sideris reside within the jurisdiction of the Court, and act directly or indirectly in the interests of the Aero Hotel, the Irwin Hotel and the Edward Hotel in relation to their employees.

2) Chris and Ernest Sideris each own 4,860 shares, or 27.4 per cent, of the outstanding stock of the Sideris-Panos Realty Company, a Nebraska corporation. The remaining outstanding shares of stock in the Sideris-Panos Realty Company are owned by Helen (Sideris) Panos (4,860 shares) and Zacharias Sideris (3,150 shares). The Sideris-Panos Realty Company is the same corporation as, and is otherwise known as, the Sideris Realty Company. The Sideris-Panos Realty Company owns the building in which the Conant Hotel and the Black Angus Restaurant and Lounge are located.

3) Chris and Ernest Sideris each own approximately 400 shares of stock in the Sideris Investment Corporation, a Nebraska corporation. The remainder of the outstanding stock in said corporation (400 shares) is held by Helen Panos. The Sideris-Panos Realty Company and the Sideris Investment Corporation are closely related entities with the investment corporation doing business on behalf of the realty company. The Sideris Investment Corporation operates the Conant Hotel and the Black Angus Restaurant/Lounge pursuant to the terms of a lease agreement executed between the Sideris-Panos Realty Company and the Sideris Investment Corporation.

4) Officers of the Sideris-Panos Realty Company are as follows: President—Zacharias Sideris; Vice President—Ernest Sideris; Secretary—Helen Panos; Treasurer—Chris Sideris.

5) Officers of the Sideris Investment Corporation are as follows: President—Chris Sideris; Vice President and Treasurer—Ernest Sideris; Acting Secretary—Helen Panos.

6) At all times relevant hereto, the combined annual dollar volume, exclusive of excise taxes at the retail level, of the Aero Hotel, the Irwin Hotel and the Edward Hotel was less than $250,000.

7) The combined annual dollar volume, exclusive of excise taxes at the retail level,

of the Aero, Irwin, Edward and Conant hotels exceeded $250,000 from January 1, 1977, through December 31, 1977; exceeded $275,000 from January 1, 1978, through December 31, 1979; and has exceeded $325,000 since January 1, 1980.

8) The Edward Hotel is a hotel used for the rental of living space which serves transients and has approximately 109 rental units. Of the 109 units, only 3 units have shower and toilet facilities. There are no telephones or televisions provided in any of the rooms. Maid service is provided every day except Sunday.

9) The Aero Hotel is a hotel used for the rental of living space which serves transients and has approximately 30 units. None of the rental units has private bath facilities, nor are telephones or televisions provided in any of the rooms. Maid service is not provided.

10) The Irwin Hotel is a hotel used for the rental of living space which serves transients and has approximately 58 units. Only 10 units have private bath facilities. Each room is equipped with a telephone and one room contains a television provided by the owners. Maid service is provided daily except Sunday.

11) The Conant Hotel is a hotel which serves permanent, semi-permanent and transient guests and has approximately 104 rooms, eight suites and five apartments. Sixty-three of the rooms have a half-bath consisting of a lavatory and toilet; the remaining 41 rooms have full baths with lavatory, toilet and shower facilities. All rooms are equipped with a telephone and 66 of the rooms are furnished with television sets. Maid service is provided for all rooms every day excluding Sunday. At all times relevant hereto, approximately 49 of the available units have been rented by permanent or semi-permanent tenants.

12) There is no interchange of employees between the Conant Hotel on the one hand and the Aero, Irwin and Edward hotels on the other. The possibility exists for employees to be interchanged among the Aero Hotel, the Irwin Hotel and the Edward Hotel.

13) Separate policies of insurance are maintained for the Aero Hotel, the Irwin Hotel, the Edward Hotel, and the Conant Hotel, and separate insurance records are kept for each establishment. The insurance agency handling coverage for the Conant Hotel is not the same as the insurance agency handling coverage for the Aero, Irwin and Edward hotels.

14) A separate checking account is maintained for the Edward Hotel. The Aero Hotel and the Irwin Hotel share a combined checking account. The checking account of the Conant Hotel is maintained separately from the checking accounts of the Aero, Irwin and Edward hotels. Each hotel's expenses, including wages and supplies, are paid out of that establishment's checking account.

15) Separate worksheets, tax records, insurance records, payroll records, and other administrative records are maintained for each of the four respective hotels. All such business records are kept at the offices of the Sideris-Panos Realty Company, 1913 Farnam Street, Omaha, Nebraska.

16) Tax returns for the Sideris-Panos Realty Company are prepared and filed separately from tax returns for the partnership business of Chris and Ernest Sideris.

17) Anita Brewer is employed by the Sideris-Panos Realty Company as office manager and secretary. Anita Brewer maintains the business records for the Conant Hotel and for the Aero, Irwin and Edward hotels. The Aero, Irwin and Edward hotels each pay a monthly administrative fee to the Sideris-Panos Realty Company in return for which the Aero, Irwin and Edward hotels receive bookkeeping and administrative services. Business records for each of the four hotels involved herein are not intermingled.

18) Since at least January 1, 1977, Chris and Ernest Sideris have had employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person at the Aero Hotel, the Irwin Hotel, and the Edward Hotel.

19) Chris and Ernest Sideris have failed to pay certain of their employees for their employment wages at not less than $2.30 per hour from January 1, 1977, through December 31, 1977; not less than $2.65 per hour from January 1, 1978, through December 31, 1978; not less than $2.90 per hour from January 1, 1979, through December 31, 1979; not less than $3.10 per hour from January 1, 1980, through December 31, 1980; and not less than $3.35 per hour since January 1, 1981.

20) Chris and Ernest Sideris have employed certain of their employees for workweeks longer than forty hours since at least January 1, 1977, without compensating said employees for their employment in excess of forty hours in such workweeks at rates not less than one and one-half the regular rates at which they were employed.

21) Chris and Ernest Sideris to the exclusion of other Sideris family members make all policy decisions for their partnership business. In reference to the Sideris-Panos Realty Company and the Sideris Investment Corporation, those persons who participate in the decisionmaking process include Chris Sideris, Zacharias Sideris, Ernest Sideris, Helen Panos and Stella Sideris.

## III. CONCLUSIONS OF LAW

The Court has jurisdiction over the subject matter and over the parties to this action. 29 U.S.C.A. § 217; 28 U.S.C.A. § 1345.

The sole question now before the Court for determination is whether the activities of Chris and Ernest Sideris are covered by the FLSA as an enterprise engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C.A. §§ 203(r) and 203(s).

The enterprise provision of the Act, 29 U.S.C.A. § 203(r), states in pertinent part:

(r) "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units....

Title 29, U.S.C.A. § 203(s), as amended, provides in pertinent part:

(s) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which—

(1) .... beginning February 1, 1969, is an enterprise, other than an enterprise which is comprised exclusively of retail or service establishments and which is described in paragraph (2), whose annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated);

(2) is an enterprise which is comprised exclusively of one or more retail or service establishments, as defined in section 213(a)(2) of this title, and whose annual gross volume of sales made or business done is not less than $250,000 (exclusive of excise taxes at the retail level which are separately stated), beginning July 1, 1978, whose annual gross volume of sales made or business done is not less than $275,000 (exclusive of excise taxes at the retail level which are separately stated), beginning July 1, 1980, whose annual gross volume of sales made or business done is not less than $325,000 (exclusive of excise taxes at the retail level which are separately stated)....

Whether several businesses constitute a single enterprise for purposes of the FLSA is a question to be resolved in each case on the basis of all the particular facts of the case—no single factual phenomenon is determinative. *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846 (8th Cir. 1975); *Usery v. Mohs Realty Corp.*, 424 F.Supp. 20, 26 (W.D.Wis.1976). The FLSA was passed to provide a minimal standard of living necessary for the health, efficiency and

general well-being of workers and to prescribe certain minimum standards for working conditions. *Brennan v. Plaza Shoe Store, supra,* 522 F.2d at 846; 29 U.S.C.A. § 202. Therefore, courts in applying the Act to the facts of a given case "... must liberally construe it 'to apply to the furthest reaches consistent with congressional direction' in fulfillment of its humanitarian and remedial purposes." *Brennan v. Plaza Shoe Store, supra, quoting Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 243 (1959); *see Dunlop v. Ashy,* 555 F.2d 1228, 1234 (5th Cir. 1977); *Hodgson v. University Club Tower, Inc.,* 466 F.2d 745, 746 (10th Cir. 1972); *Shultz v. Mack Farland & Sons Roofing Co.,* 413 F.2d 1296, 1300 (5th Cir. 1969). The purpose of the 1961 congressional amendments, which introduced the concept of "enterprise" coverage into the Act, was to strengthen and enlarge the scope of the Act. *Hodgson v. University Club Tower, supra,* 466 F.2d at 746; *Wirtz v. First National Bank and Trust Co.,* 365 F.2d 641, 643 (10th Cir. 1966); *Usery v. Mohs Realty, supra,* 424 F.Supp. at 26.

The parties herein agree that in order to subject Chris and Ernest Sideris to the minimum wage, overtime compensation and recordkeeping provisions of the Act, the Sideris' activities must be found to constitute an enterprise engaged in commerce. Three elements must coexist before defendants' activities can be considered a single enterprise: (1) related activities (2) performed through unified operation or common control (3) for a common business purpose. *Brennan v. Arnheim & Neely, Inc.,* 410 U.S. 512, 518, 93 S.Ct. 1138, 1142, 35 L.Ed.2d 463 (1973); *Brennan v. Plaza Shoe Store, supra,* 522 F.2d at 846; *Hodgson v. University Club Tower, supra,* 466 F.2d at 746; *Marshall v. Frozen Assets, Ltd.,* 513 F.Supp. 591, 593 (E.D.Mo.1981). The Court turns now to an examination of each of the three above-listed elements in light of the factual circumstances presented in this case.

## A. Related Activities

As with the elements of "unified operation or common control" and "common business purpose," the FLSA employs the words "related activities" but contains no definition of that term. Regulations promulgated by the Secretary of Labor cite to the legislative history of the Act which supports the position that activities are related when they are the "same or similar." 29 C.F.R. § 779.206(a) (1979). The following language contained in the regulations provides additional assistance:

> Generally, the answer to the question whether particular activities are "related" or not, will depend in each case upon whether the activities serve a business purpose common to all the activities of the enterprise, or whether they serve a separate and unrelated business purpose. 29 C.F.R. § 779.206(b) (1979).

> In the case of an enterprise which has one or more retail or service establishments, all of the activities which are performed for the furtherance of the common business purpose of operating the retail or service establishments are "related activities." It is not material that the enterprise sells different goods or provides different services, or that it operates separate retail or service establishments. 29 C.F.R. § 779.207 (1979).

Courts should focus not on the variety of merchandise sold or services provided, but rather on the similarity of the business operations, such as retail sales, in determining whether activities are related. *Brennan v. Plaza Shoe Store, supra,* 522 F.2d at 848.

Chris and Ernest Sideris strongly urge the Court that the activities of their partnership in running three hotels aimed at providing temporary living quarters for a highly transient clientele are not the same as or similar to the activities of the Sideris Investment Corporation in operating the Conant Hotel, which provides living accommodations to a number of permanent and semi-permanent guests. Defendants rely heavily on *Hodgson v. University Club Tower, supra,* in which the Court of Appeals held that apartment buildings serving primarily permanent tenants did not per-

form the same or similar activities as a hotel serving transients, and that they were, therefore, not engaged in related activities. By way of explanation, the *University Club Tower* court stated:

> With regard to similarity, we have establishments which are alike in that they furnish living space and accompanying facilities and services. They are different in that they attract and serve different customers and furnish different products. One provides temporary quarters for travelers and the other permanent residence for homemakers.

466 F.2d at 748.

*See also Marshall v. McAlester Corp.*, 438 F.Supp. 1005, 1013 (E.D.Okl.1977) (activities of hotel and apartment corporation held not the same or similar for purposes of the FLSA).

■ Involved in the present action are establishments which rent living space and furnish accompanying services. Unlike *Hodgson v. University Club Tower, supra*, however, all of the establishments involved herein accept and serve transient guests. The Conant Hotel, owned and operated by Sideris family corporations, does rent approximately 49 of its units to permanent and semi-permanent tenants. But it cannot fairly be said that the Conant Hotel primarily serves permanent residents or that the activities of the Conant Hotel serve a business purpose unrelated to that served by the Aero, Irwin and Edward hotels. The Court concludes that the Aero, Irwin and Edward hotels and the Conant Hotel are engaged in related activities within the meaning of 29 U.S.C.A. § 203(r), for at each location rooms were rented on a transient basis to the general public. These activities, being the same or similar, clearly fall within the congressional and administrative concept of related activities.

### B. Common Business Purpose

■ The regulations provide that the term "common business purpose" generally encompasses activities whether performed by one or more persons or by a corporation or other business organization, which are directed to the same business objective or to similar objectives in which the group has an interest. 29 C.F.R. § 779.213 (1979). "(C)ommon ownership of 'related activities' carries considerable weight toward a determination that there is a 'common business purpose.'" *Brennan v. Plaza Shoe Store, supra*, 522 F.2d at 848. It is well established, however, that a profit motive alone is insufficient to justify the conclusion that related activities are performed for a common business purpose. *Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1367 (5th Cir. 1973); *Hodgson v. University Club Tower, supra*, 466 F.2d at 747; *Wirtz v. Columbian Mutual Life Ins. Co.*, 380 F.2d 903, 907 (6th Cir. 1967); *Wirtz v. First National Bank and Trust Co., supra*, 365 F.2d at 644; *Usery v. Mohs Realty, supra*, 424 F.Supp. at 28.

■ In the present action, the partnership business of Chris and Ernest Sideris has more in common with the two Sideris family-owned corporations than the goal of making a profit. Their related activities are performed for the common purpose of operating and maintaining hotels in which Chris and Ernest Sideris own a substantial interest. *Marshall v. McAlester Corp., supra*, 438 F.Supp. at 1014. Stated somewhat differently, defendants' activities are tied together by the shared purpose of managing commercial hotel properties for profit. *See Brennan v. Arnheim & Neely, supra*, 410 U.S. at 519, 93 S.Ct. at 1142. Chris and Ernest Sideris' ownership of the majority of outstanding stock in the Sideris-Panos Realty Company and Sideris Investment Corporation, plus their exercise of management expertise on behalf of all four hotel establishments would certainly seem to "facilitat(e) the internal operation of the business ...." *Wirtz v. Columbian Mutual Life Ins. Co., supra*, 380 F.2d at 907; *see Marshall v. Frozen Assets, supra*, 513 F.Supp. at 593; *Usery v. Mohs Realty, supra*, 424 F.Supp. at 28. The evidence of record indicates the presence of a common business purpose here.

## C. Common Control

The final and most difficult question which the Court must decide is whether the Aero, Irwin and Edward hotels on the one hand, and the Conant Hotel on the other, are under either "unified operation" or "common control." Plaintiff need demonstrate only one of these two alternative requirements. *Dunlop v. Ashy, supra,* 555 F.2d at 1231; *Wirtz v. Barnes Grocer Co.,* 398 F.2d 718, 721 (8th Cir. 1968); 29 C.F.R. § 779.215(a) (1979). It may be noted that the Secretary does not claim the existence of a unified operation herein.

In ascertaining whether the common control requirement has been satisfied, we first look to the administrative interpretations of the Department of Labor for guidance. The regulations state that control includes the power or authority to control and that ownership may be a significant factor in determining whether activities are performed through common control. 29 C.F.R. §§ 779.215(b), 779.221, 779.222 (1979). Sufficient ownership to exercise control will be regarded as adequate to meet the common control requirement. 29 C.F.R. § 779.222 (1979). And ownership sufficient to exercise "control" exists where there is more than 50 per cent ownership of voting stock. 29 C.F.R. § 779.223 (1979). The mere ownership of stock in a corporation, however, does not by itself establish the existence of the "control" referred to in the definition. *Id.*

It has been judicially determined that the test of common control is not ownership of the business, but rather whether there is a common control center with the ultimate power to make binding decisions for all units of the enterprise. *Dunlop v. Ashy, supra,* 555 F.2d at 1231; *Hodgson v. Eunice Superette, Inc.,* 368 F.Supp. 639, 642 (W.D.La.1973); *Shultz v. Morris,* 315 F.Supp. 558, 564 (M.D.Ala.1970), *aff'd, Hodgson v. Morris,* 437 F.2d 896 (5th Cir. 1971); *see Shultz v. Mack Farland, supra,* 413 F.2d at 1301. Separate management does not, of course, destroy common control. "The requirement is the power of actual control, not the exercise of that pow-er." *Hodgson v. University Club Tower, supra,* 466 F.2d at 747; *Marshall v. McAlester Corp., supra,* 438 F.Supp. at 1012. As did the Court of Appeals in *Brennan v. Plaza Shoe Store, supra,* "[w]e give special consideration to the fact that one family participated in the ownership of the four [hotels]." 522 F.2d at 848.

It is not controverted herein that Chris and Ernest Sideris together own a majority of the outstanding shares in both the Sideris-Panos Realty Company, which owns the Conant Hotel building, and the Sideris Investment Corporation, which operates the Conant Hotel. Also, the partnership business of Chris and Ernest Sideris owns the Aero, Irwin and Edward hotels in their entirety. The record is somewhat unclear as to the precise extent to which Chris and Ernest Sideris participate in the management of the Conant Hotel.

In his argument, without adducing evidence to the effect that Chris and Ernest Sideris possessed the power of actual control with respect to the Conant Hotel's operations, the Secretary equates stock ownership with control and states that Chris and Ernest Sideris "had the right" to control all four hotels. The Secretary makes a leap of faith to conclude that Chris and Ernest Sideris must be the common control center having ultimate power to make binding policy decisions for all units of the enterprise.

At trial, in reference to the decisionmaking process extant within the Sideris family-owned corporations, Chris Sideris testified as follows:

Q. Who makes the decisions for the partnership?

A. I or my brother.

Q. And your sister and your father and mother make none of the decisions?

A. Never.

Q. Who makes the decisions for the realty company?

A. The entire family.

Q. Does any one individual have any more say so in the realty company than the others?

A. None whatsoever.

Q. With regard to the realty company, could any one of you make a policy decision without the authority or the approval of the others?

A. No.

Tr. at 25.

The Court credits this testimony, especially in view of the absence of countervailing evidence. From the inception of their partnership venture, Chris and Ernest Sideris controlled the Aero, Irwin and Edward hotels separately from the influence of the rest of the Sideris family. *See Brennan v. Plaza Shoe Store, supra,* 522 F.2d at 849. But it does not appear that the Conant Hotel may be controlled by Chris and Ernest Sideris as they, in their unfettered discretion, deem fit. *See Hodgson v. University Club Tower, supra,* 466 F.2d at 747. Chris and Ernest Sideris did not themselves put up all the capital for both the partnership and the family-owned corporations. *Cf. Shultz v. Mack Farland, supra,* 413 F.2d at 1301 (founder and sole investor in two roofing corporations used them as a single enterprise to engage in the roofing business). Further, Zacharias Sideris, the father of Chris and Ernest, continues to work every day and to play an active role in the business of the Sideris-Panos Realty Company.

This Court is aware of the dominant equity position of Chris and Ernest Sideris in terms of stock ownership in the two family corporations. *See Shultz v. Morris, supra,* 315 F.Supp. at 564. Nevertheless, it is not clear from this record that Chris and Ernest Sideris are the "primary driving force behind each of the corporations . . . ." *West v. Wal-Mart, Inc.,* 264 F.Supp. 158, 164 (W.D.Ark.1967). In the face of the overriding agreement to agree among the Sideris family members, Chris and Ernest Sideris by themselves do not possess the ultimate power to make binding decisions for all units of the enterprise. Any policy decisions made by Chris and Ernest Sideris are not obligatory on the Sideris-Panos Realty Company or Sideris Investment Corporation without the concurrence and approval of the other Sideris family members. It follows that whatever related activities are performed by the partnership business and the Sideris family-owned corporations are not performed through common control, and that the Secretary has failed to meet his burden of establishing this requisite element of enterprise liability under the FLSA.

## IV. CONCLUSION AND DISPOSITION

The Court is mindful of the liberal and remedial construction to be afforded the Fair Labor Standards Act in furthering its beneficent objectives. *Dunlop v. Ashy, supra,* 555 F.2d at 1234. The Act, however, "must be applied with reason and in a common sense fashion." *Id.* In the final analysis, coverage under the FLSA must be consistent with congressional direction, *Brennan v. Plaza Shoe Store, supra,* 522 F.2d at 846, and is dependent upon the congressional requirements. The Court is convinced that one of those requirements, "common control," has not been satisfied here. Plaintiff is, therefore, not entitled to the relief sought.

The Court holds that the activities performed by Chris and Ernest Sideris' partnership business and the activities engaged in by the Sideris-Panos Realty Company and Sideris Investment Corporation, although related and joined by a common business purpose, are not performed under common control as required by 29 U.S.C.A. § 203(r). Therefore, the activities of Chris and Ernest Sideris do not constitute an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C.A. § 203(s). Since the combined annual dollar volume, exclusive of excise taxes at the retail level, of the Aero, Irwin and Edward hotels is less than the dollar volume limitation stated in the statutory definition of enterprise, defendants are exempt from coverage under the Act.

An order declaring Chris Sideris and Ernest Sideris d/b/a the Aero Hotel, the Irwin Hotel and the Edward Hotel to be exempt from the provisions of the Fair

Labor Standards Act, and dismissing plaintiff's complaint, will be entered contemporaneously with this memorandum.